## TINER and CONREY *v.* JOSEPH MAILLOT.

The plaintiffs sold a steamer to A. and B., for the accommodation acceptances of the defendant. They also had the policy for the insurance of the boat transferred to them. On this policy $1000 were collected, which the plaintiffs permitted A. to use. *Held:* That the plaintiffs were bound to have seen the $1000 applied to the payment of the acceptances; and that the acceptor was discharged to that extent.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Frank Haynes*, for plaintiffs. *Race* and *Foster*, for defendant. The judgment of the court was pronounced by

PRESTON, J. The plaintiffs sold the steamboat Chalmet to *Dalferes* and *Thomason*, on the 19th of October, 1849. Among other considerations, they gave a draft for $1000, accepted by the defendant, payable eight months after date, or on the 19th of June, 1850; and a draft for $1250, payable a year after date. The steamboat was also, by the contract, to be insured for the full amount of the price, $6500, and the policy assigned to the plaintiffs to secure the payment of the price, including these drafts. The defendant is sued on the last draft; and contends, that he is not liable to pay it, because the boat was partially injured; and that $1040 was received by the plaintiffs from the insurance company, and was paid over to *Dalferes*, instead of being applied to the payment of this draft.

We think the bill of sale affords intrinsic evidence, that the acceptance of *Maillot* was for the accommodation of *Dalferes* and *Thomason*.

The vendors had the policy in their hands, to secure its payment; and were bound to apply the security in their hands to relieve the acceptor of the draft, as far as possible.

The plaintiffs did give the money they received from the insurance company to *Dalferes*, to repair the boat. This was its true and equitable destination; but *Dalferes* did not appropriate it to that purpose. It was the duty of the plaintiffs to have seen that it was so used, and thereby, so far, to have rendered more valuable the boat, upon which they had a privilege, as vendors, for the payment of the drafts; and thereby to have maintained unimpaired the security in their hands.

It is true, also, that *Dalferes*, subsequently to the receipt of the insurance, handed over to the plaintiffs $700, out of monies collected on account of the boat, to aid in taking up the draft of $1000 payable at eight months. It was his duty to have done this, independently of the money received for the insurance, which he, as well as the plaintiffs, should have seen faithfully applied to the repair of the boat, and, so far, to relieve his accommodation acceptor. As he did not repair the boat, he should have returned the money to the defendant to pay the drafts, or so far, to have paid them himself; and it was the duty of the plaintiffs to have secured the money for that purpose. Equity forbids that the plaintiffs should recover from the defendant, when they have disposed of means placed in their hands to pay themselves, and without which he probably would not have become surety for the payment of the price of their boat.

The judgment of the district court is reversed, and judgment is rendered for the plaintiff, against the defendant, for $209 53, with interest from the judicial

demand, and costs in the district court; those of appeal, to be paid by the appellees.

SLIDELL, J., dissenting. I do not find the fact established, that the plaintiffs knew, when they took the draft or received the insurance money, that the defendant was an accommodation acceptor. In the absence of information to them on this point, they have clearly a right, I think, to consider him as an ordinary acceptor for value, and are not to be held towards him as though he were a surety.

I have not been able to arrive at the conclusion adopted by my brethren.